UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BLUELINX CORPORATION | ) | |
| | ) | CIVIL ACTION FILE NO. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL VEILLETTE | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES, AND DEMAND FOR JURY TRIAL

Plaintiff BlueLinx Corporation ("Plaintiff" or "BlueLinx"), by and through its undersigned attorneys, files this Complaint for Injunctive Relief and Damages against Defendant Paul Veillette ("Defendant" or "Veillette").

## PRELIMINARY STATEMENT

This case involves Defendant Paul Veillette's wrongful competition with BlueLinx and solicitation of BlueLinx's customers and employees for his own gain and the gain of his new employer – MJB Wood, Inc. ("MJB Wood") – in violation of Veillette's contractual obligations, tortious interference with BlueLinx's customer relationships, and breach of fiduciary duty.

BlueLinx employed Veillette for over five (5) years as a General Manager II. During his employment, Veillette specifically solicited sales on behalf of BlueLinx

1

and had sole responsibility for BlueLinx's profits and losses in his assigned geographic sales and distribution district. Veillette received incentive compensation based upon his sales performance and completion of company objectives. As a General Manager II, Veillette had control over, had access to, and gained extensive knowledge of BlueLinx's sales, customer service, logistics and distribution management, inventory, and personnel in his district.

In light of Veillette's access to BlueLinx's proprietary business information, Veillette executed an Employee Non-Disclosure, Non-Solicitation and Non-Competition Agreement ("Employment Agreement") with BlueLinx which prohibited, among other things, his accepting employment in substantially the same role with a direct competitor of BlueLinx in specific geographic areas, soliciting BlueLinx's customers with whom he had material contact during the one (1) year preceding the termination of his employment with BlueLinx, or recruiting or attempting to recruit BlueLinx's employees for a term of one (1) year following his employment with BlueLinx. <u>See</u> Employee Non-Disclosure, Non-Solicitation, and Non-Competition Agreement with Paul Veillette, attached hereto as Ex. A. The Employment Agreement was necessary to protect BlueLinx's competitive standing in the marketplace. Veillette also agreed to abide by BlueLinx's Code of Ethical Conduct which prohibited employees from engaging in activities that could

create a conflict with the employee's duty of loyalty to BlueLinx.  See BlueLinx Holdings, Inc., Code of Ethical Conduct, attached hereto as Ex. B.

Notwithstanding the terms of the Employment Agreement and the Code of Ethical Conduct, Veillette resigned his employment with BlueLinx on or around April 20, 2016, and informed BlueLinx that he was accepting a position in the Door and Window Division of MJB Wood, in violation of his Employment Agreement.  Upon information and belief, Veillette quickly began soliciting BlueLinx's customers, including but not limited to, Bison Building Materials, LLC ("Bison"), one of BlueLinx's largest customers in Houston, TX, and a customer with whom he had Material Contact during the year preceding his termination. Veillette's solicitation of Bison was also a violation of his Employment Agreement.  Further, upon information and belief, Veillette also violated his Employment Agreement by attempting to recruit BlueLinx's employees or independent contractors to MJB Wood.

Upon discovery of Veillette's wrongful conduct, BlueLinx sent Veillette and MJB Wood a letter reminding Veillette and informing MJB Wood of Veillette's obligations not to compete with BlueLinx, not to solicit its customers, and not to recruit its employees under the Employment Agreement and demanded that Veillette return BlueLinx's trade secret, confidential, and proprietary information. See Letter re: BlueLinx Corporation – Employee Non-Disclosure, Non-Solicitation

3

and Non-Competition Agreement, dated July 1, 2016, attached hereto as Ex. C. On July 25, 2016, Veillete and MJB Wood responded and denied that Veillete was violating his Employment Agreement. See Letter re: BlueLinx Corporation's Letter to MJB Wood Group, Inc. and Paul Veillette, attached hereto as Ex. D. Specifically, Veillete and MJB Wood denied that Veillette (1) competed with BlueLinx on behalf of MJB Wood; (2) solicited BlueLinx customers; or (3) recruited BlueLinx employees or independent contractors. See Ex. D.

Upon information and belief, Veillette continues to work for MJB Wood, solicit BlueLinx's customers, and recruit BlueLinx's employees in violation under the Employment Agreement. Accordingly, BlueLinx brings this action to enjoin and seek redress for illegal conduct by Defendant Paul Veillette.

## THE PARTIES

1.     BlueLinx is a leading distributor of building products in North America. BlueLinx is dedicated to providing high quality building products from over 750 suppliers to approximately 11,500 customers nationwide, including dealers, industrial manufacturers, manufactured housing producers, and home improvement retailers. BlueLinx is a corporation organized under the laws of the State of Georgia, with its principal place of business located at 4300 Wildwood Parkway, Atlanta, GA 30339.

4

2.     Veillette was formerly a General Manager II at BlueLinx from the period February 17, 2011 until April 29, 2016.  As a General Manager II, Veillette was responsible for BlueLinx's profits and losses, top line sales, gross margin, and all direct costs of his assigned geographic sales and distribution district.  This included responsibility over BlueLinx's sales, customer service, logistics and distribution management, inventory, and personnel in his district.  Veillette has accepted a position with MJB Wood, a direct competitor of BlueLinx, in violation of his Employment Agreement.  Veillette resides at 1204 Volunteer Drive, Brunswick, MD 21716.

## JURISDICTION AND VENUE

3.     Jurisdiction exists against Defendant pursuant to 28 U.S.C. § 1332, in that there is complete diversity of citizenship between Plaintiffs and Defendant, and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the unlawful conduct giving rise to the claims alleged herein occurred in this District.

5.     This Court has personal jurisdiction over Veillette based upon his substantial and numerous contacts with Georgia while employed at BlueLinx and pursuant to O.C.G.A. § 9-10-91 because he committed a tortious act or injury

within the state of Georgia, and/or has committed a tortious injury in the state of Georgia caused by an act or omission outside the state of Georgia.

## FACTS

6.      Veillette commenced employment with BlueLinx on or around February 17, 2011 as a General Manager II.

7.      As a General Manager II, Veillette was primarily responsible for BlueLinx's profits and losses, top line sales, gross margin, and all direct costs of his assigned geographic sales and distribution district.  This included responsibility over BlueLinx's sales, customer service, logistics and distribution management, inventory, and personnel in his district.

8.      In 2015, Veillette was offered incentive compensation based in part upon BlueLinx's sales performance.

9.      As a condition of and in consideration of his equity grant, Veillette executed the Employment Agreement on or about July 27, 2015.  See Ex. A.

10.      Pursuant to the non-compete provision of the Employment Agreement, Veillette agreed not to compete against BlueLinx during his employment and for a period of one year after the termination of his employment from BlueLinx.

11.      Veillette's covenant against competition states:

>  I agree that during my employment with BlueLinx, and, unless I experience an Involuntary Termination, for a

6

period of one (1) year after termination of my employment with BlueLinx, I will not engage in, provide, or perform Competitive Services within the Territory or any other territory where I worked on behalf of BlueLinx during the one (1) year preceding the termination of my employment with BlueLinx. For purposes of this Agreement "Competitive Services" means the business of wholesale distribution of building products, as well as, the business of providing any other activities, products, or services of the type conducted, authorized, offered, or provided by BlueLinx as of the date of my termination, or during the two (2) years immediately prior to the date of my termination.

See Ex. A, ¶ E.

12.     Veillette's Employment Agreement also contains a non-solicitation covenant which provides:

During my employment and for one (1) year immediately following the termination of my employment with BlueLinx for any reason, I shall not, on my own behalf or on behalf of any person, firm, partnership, association, corporation or business organization, entity or enterprise (except BlueLinx), solicit, divert, take away, or attempt to solicit, divert, or take away any existing or prospective customer of BlueLinx with whom I had Material Contact during my employment with BlueLinx, for the purpose of selling or providing any product, equipment or service competitive with any product, equipment or service of BlueLinx. For purposes of this Agreement, "Material Contact" means contact between myself and a customer or potential customer of BlueLinx (i) with whom or which I had dealings on behalf of BlueLinx; (ii) whose dealings with BlueLinx I coordinated or supervised; (iii) about whom or which I obtained Confidential Information in the ordinary course of business as a result of my employment with BlueLinx; or (iv) who or which received BlueLinx products or services, the sale or

7

provision of which resulted in compensation, commissions, or earnings for me within the two (2) years prior to the date of my termination from employment with BlueLinx.

See Ex. A, ¶ B.

13.     Veillette's Employment Agreement also contains a non-recruitment covenant which provides:

During my employment and for one (1) year immediately following the termination of my employment with BlueLinx for any reason, I shall not, directly or indirectly, on my own behalf or on behalf of any person, firm, partnership, association, corporation or business organization, entity or enterprise (except BlueLinx), solicit, recruit or induce, or attempt to solicit, recruit or induce, any employee or independent contractor of BlueLinx to terminate his/her employment or other relationship with BlueLinx, or to enter into employment or any other kind of business relationship with me or any other person or business.

See Ex. A, ¶ D.

14.     Breach or threatened breach of Veillette's obligation under the Employment Agreement entitles BlueLinx to an injunction restraining the use and disclosure of BlueLinx's confidential information and restraining Veillette's competition, solicitation, recruitment, and interference activities. Specifically, Veillette agreed that "remedy at law for any breach…of this Agreement (the "Restrictive Covenants") will be inadequate and that in the event I breach, or threaten to breach, any of the Restrictive Covenants, BlueLinx shall have the right

and remedy, without the necessity of proving actual damage or posting any bond, to enjoin me, preliminarily and permanently, from violating or threatening to violate the Restrictive Covenants and to have the Restrictive Covenants specifically enforced by any court of competent jurisdiction." <u>See</u> Ex. A, ¶ H.

15.    In addition to the terms set forth in Veillette's Employment Agreement, Veillette was bound by the policies and terms set forth in the BlueLinx Code of Ethical Conduct.  <u>See</u> Ex. B.

16.    Pursuant to BlueLinx policy, Veillette reviewed the BlueLinx Code of Ethical Conduct and affirmed his commitment to abide by the terms therein.

17.    The Code of Ethical Conduct contains a conflict of interest provision, requiring that employees recognize and avoid all unapproved activities and personal interests which create or appear to create a conflict with the interests of BlueLinx.  The Code of Ethical Conduct states that:

> Every employee has a duty to avoid financial, business or other relationships that might be opposed to the interests of (BlueLinx), or any of its subsidiaries of affiliated corporations, or which might cause a conflict with the performance of his or her duties.  Such a conflict would occur when any outside activity or investment interferes with or influences the exercise of your independent and objective judgment in the best interests of (BlueLinx).  Your obligation to conduct (BlueLinx's) business in an honest and ethical manner includes, among other things, the ethical handling of actual, apparent and potential conflicts of interests between personal and business relationships.  This includes full disclosure of any actual, apparent or potential conflicts of interest.

9

<u>See</u> Ex. B, p. 2.

## **<u>VEILLETTE'S UNLAWFUL CONDUCT</u>**

18.    While still employed with BlueLinx and in violation of the Employment Agreement, Veillette accepted a sales position with MJB Wood.

19.    MJB Wood directly competes with BlueLinx in the field of building materials.

20.    Upon information and belief, Veillette has solicited and will continue to solicit BlueLinx's existing customers, including but not limited to Bison, to generate and conduct business on behalf of MJB Wood.

21.    Upon information and belief, Veillette has solicited and will continue to solicit BlueLinx's existing employees or independent contractors in violation of his Employment Agreement in an effort to divert business from BlueLinx to MJB Wood.

22.    On or about April 20, 2016, Veillette informed BlueLinx that he would be resigning his position as a General Manager II.

23.    On or about July 1, 2016, BlueLinx sent Veillette a letter reminding him of his non-disclosure and non-solicitation obligations under the Employment Agreement.  <u>See</u> Ex. C.

24.    On or about July 25, 2016, Veillette and MJB Wood responded and denied that Veillette breached the Employment Agreement by (1) competing with

10

BlueLinx; (2) soliciting its customers; or (3) recruiting its employees or independent contractors. See Ex. D.

25.    Veillette's actions violate the Employment Agreement and the Code of Ethical Conduct.

26.    BlueLinx will be damaged if Veillette is allowed to compete against BlueLinx in a position that requires the performance of duties like those Veillette performed for BlueLinx as a General Manager II.

27.    As a result of Veillette's unlawful and unjustified conduct, BlueLinx has been damaged by the loss of its customers.

28.    As a result of Veillette's unlawful and unjustified conduct, BlueLinx has been damaged by the loss of its employees.

29.    BlueLinx has been harmed and continues to suffer irreparable harm as a consequence of Veillette's unlawful actions.

30.    Based on the foregoing wrongful conduct by Veillette, which was knowing, willful, intentional, reckless and/or grossly negligent, BlueLinx is entitled to an award of compensatory damages, punitive damages, and injunctive relief.

## COUNT I
## BREACH OF CONTRACT: NON-COMPETE AGREEMENT

31.    BlueLinx repeats and realleges paragraphs 1 through 30 above as if fully stated herein.

11

32.     Pursuant to the non-compete covenant of the Employment Agreement by and between Veillette and BlueLinx, Veillette was prohibited, during employment and for a period of one (1) year immediately following the termination of his employment from performing "Competitive Services" within the Territory or any other territory where he worked on behalf of BlueLinx during the one (1) year preceding the termination of his employment.  According to the terms of the Employment Agreement, "'Competitive Services' means the business of wholesale distribution of building products, as well as, the business of providing any other activities, products, or services of the type conducted, authorized, offered, or provided by BlueLinx as of the date of (Veillette's) termination, or during the two (2) years immediately prior to the date of (Veillette's) termination. See Ex.A, ¶ E.  According to the terms of the Employment Agreement, "Territory" means Delaware, the District of Columbia, Maryland, Pennsylvania, Texas, Virginia, and West Virginia.  See Ex. A, p. 1.

33.     Veillette violated the covenant not to compete clause when he, *inter alia*, accepted a position with competing business, MJB Wood to perform the same duties, in Maryland and other states, that he performed for and on behalf of BlueLinx.

34.    The non-compete clause of the Employment Agreement, is valid and enforceable under Georgia law, which governs its interpretation and enforcement. See Ex. A, ¶ K.

35.    The non-compete clause is reasonably calculated to protect BlueLinx's legitimate business interests, which include, but are not limited to, protection of BlueLinx's relationships with its customers.

36.    Veillette was and is prohibited from performing "Competitive Services" in the "Territory," including but not limited to the state of Maryland, or any other territory where he worked, until after April 29, 2017.  See Ex. C, p. 1.

37.    Veillette's actions in accepting a position with MJB Wood's Door and Window Division in the state of Maryland constitute a breach of the non-compete covenant of the Employment Agreement.

38.    Veillette anticipatorily agreed that breach or threatened breach of his non-compete obligations entitles BlueLinx to an injunction restraining his wrongful conduct.  See Ex. A, ¶ H.

39.    As a result of Veillette's breach, BlueLinx has suffered and continues to suffer great and irreparable harm.  In addition, or in the alternative, BlueLinx has suffered damages in an amount to be determined at trial.

40.    BlueLinx has a substantial likelihood of success on the merits of this claim and injunctive relief would serve the public interest.

41.     Wherefore, BlueLinx demands that the Court enter judgment against Veillette:

    a.   Awarding BlueLinx an injunction to enforce the non-compete provision of the Employment Agreement, and equitably toll the non-compete provision for the period of Veillette's violations;

    b.   Awarding BlueLinx damages in an amount to be determined at trial, together with interest;

    c.   Awarding BlueLinx its reasonable attorneys' fees and costs incurred; and

    d.   Awarding BlueLinx such other and further relief as the Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT: NON-SOLICITATION OBLIGATIONS

42.     BlueLinx repeats and realleges paragraphs 1 through 41 above as if fully stated herein.

43.     Pursuant to the non-solicitation covenant of the Employment Agreement entered into by and between BlueLinx and Veillette, Veillette was prohibited, during employment and for a period of one (1) year immediately following the termination of his employment with BlueLinx, from soliciting, diverting, taking away, or attempting to solicit, divert, or take away business from a customer or prospective customer of BlueLinx which was a person or entity with

14

whom Veillette had Material Contact during the two (2) year period prior to his termination.  See Ex. A, ¶ B.

44.    The non-solicitation clause of the Employment Agreement is valid and enforceable under Georgia law, which governs its interpretation and enforcement.  See Ex. A, ¶ K.

45.    The non-solicitation clause is reasonably calculated to protect BlueLinx's legitimate business interests, which include, but are not limited to, protection of BlueLinx's relationships with its customers.

46.    Veillette was and is prohibited from soliciting BlueLinx's customers, as set forth in the non-solicitation clause of the Employment Agreement, until after April 29, 2017.  See Ex. C, p. 1.

47.    During the period in which Veillette was prohibited from soliciting BlueLinx's customers, upon information and belief, Veillette actively solicited BlueLinx's customers, including, but not limited to, Bison, for the purpose of offering products competitive with those offered by BlueLinx.

48.    Upon information and belief, Veillette continues to solicit customers with whom he had Material Contact during his employment with BlueLinx, and who purchased products from BlueLinx.

49.    Veillette's actions in soliciting BlueLinx's customers including, but not limited to, Bison, constitute a breach of the non-solicitation covenant of the Employment Agreement.

50.    Veillette anticipatorily agreed that breach or threatened breach of his non-solicitation obligations entitles BlueLinx to an injunction restraining his wrongful conduct.

51.    As a result of Veillette's breach, BlueLinx has suffered and continues to suffer great and irreparable harm.  In addition, or in the alternative, BlueLinx has suffered damages in an amount to be determined at trial.

52.    BlueLinx has a substantial likelihood of success on the merits of this claim and injunctive relief would serve the public interest.

53.    Wherefore, BlueLinx demands that the Court enter judgment against Veillette:

a.    Awarding BlueLinx an injunction to enforce the non-solicitation provision of the Employment Agreement, and equitably toll the non-solicitation provision for the period of Veillette's violations;

b.    Awarding BlueLinx damages in an amount to be determined at trial, together with interest;

c.    Awarding BlueLinx its reasonable attorneys' fees and costs incurred; and

16

d.  Awarding BlueLinx such other and further relief as the Court deems

just and proper.

## COUNT III
## BREACH OF CONTRACT: NON-RECRUITMENT OBLIGATIONS

54.    BlueLinx repeats and realleges paragraphs 1 through 53 above as if

fully stated herein.

55.    Pursuant to the non-recruitment covenant of the Employment

Agreement entered into by and between BlueLinx and Veillette, Veillette was

prohibited, during employment and for a period of one (1) year immediately

following the termination of his employment with BlueLinx from directly or

indirectly, for himself or on behalf of anyone else, soliciting, recruiting, inducing,

or attempting to solicit, recruit, or induce, any of BlueLinx's employees or

independent contractors to terminate their employment or other relationship with

BlueLinx or enter any type of employment or business relationship with any other

person or business.  See Ex. A, ¶ D.

56.    The non-recruitment clause of the Employment Agreement is valid

and enforceable under Georgia law, which governs its interpretation and

enforcement.  See Ex. A, ¶ K.

57.    The non-recruitment clause is reasonably calculated to protect

BlueLinx's legitimate business interests, which include, but are not limited to,

17

protection of BlueLinx's relationships with its employees and independent contractors.

58.    Veillette was and is prohibited from soliciting BlueLinx's employees or independent contractors, as set forth in the non-recruitment clause of the Employment Agreement, until after April 29, 2017.  See Ex. C, p. 1.

59.    During the period in which Veillette was prohibited from soliciting BlueLinx's employees or independent contractors, upon information and belief, Veillette actively solicited BlueLinx's employees or independent contractors for the purpose of joining MJB Wood and competing with BlueLinx.

60.    Upon information and belief, Veillette continues to recruit BlueLinx's employees or independent contractors.

61.    Veillette's actions in soliciting BlueLinx's employees or independent contractors constitute a breach of the non-recruitment covenant of the Employment Agreement.

62.    Veillette anticipatorily agreed that breach or threatened breach of his non-recruitment obligations entitles BlueLinx to an injunction restraining his wrongful conduct.  See Ex. A, ¶ H.

63.    As a result of Veillette's breach, BlueLinx has suffered and continues to suffer great and irreparable harm.  In addition, or in the alternative, BlueLinx has suffered damages in an amount to be determined at trial.

64.     BlueLinx has a substantial likelihood of success on the merits of this claim and injunctive relief would serve the public interest.

65.     Wherefore, BlueLinx demands that the Court enter judgment against Veillette:

   a.   Awarding BlueLinx an injunction to enforce the non-recruitment provision of the Employment Agreement, and equitably toll the non-recruitment provision for the period of Veillette's violations;

   b.   Awarding BlueLinx damages in an amount to be determined at trial, together with interest;

   c.   Awarding BlueLinx its reasonable attorneys' fees and costs incurred; and

   d.   Awarding BlueLinx such other and further relief as the Court deems just and proper.

## COUNT IV
## TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE

66.     BlueLinx repeats and realleges paragraphs 1 through 65 above as if fully stated herein.

67.     Upon information and belief, Veillette solicited one or more of BlueLinx's existing customers, including Bison, with the intent to cause such

19

customers to cease or materially reduce their business relationships with BlueLinx, in favor of securing products from MJB Wood.

68.    Upon information and belief, consequent to Veillette's interference, BlueLinx has already been damaged and expects further damage.

69.    When Veillette, on behalf of MJB Wood, solicited BlueLinx's existing customers, he had knowledge of the relationship between BlueLinx and its existing customer base.

70.    When Veillette, on behalf of MJB Wood, solicited BlueLinx's customers, he had knowledge of BlueLinx's expectation of economic benefit from those customers.

71.    But for Veillette's intentional and unlawful interference, BlueLinx would have received the economic benefit of its continued relationship with its existing customers because cancellation of BlueLinx product orders is very rare.

72.    Veillette's wrongful conduct was knowing, willful, intentional, malicious, reckless or grossly negligent.

73.    BlueLinx has suffered and will continue to suffer immediate and irreparable harm as a result of Veillette's conduct.

74.    BlueLinx has a substantial likelihood of success on the merits of this claim and injunctive relief would serve the public interest.

75.     Wherefore, BlueLinx demands that the Court enter judgment against Veillette:

a.  Enjoining Veillette from tortuously interfering with BlueLinx's prospective business relationships and existing contracts with its customers;

b.  Requiring Veillette to provide BlueLinx with a full accounting of the profits obtained from his wrongful conduct;

c.  Requiring Veillette to pay compensatory and punitive damages to BlueLinx in an amount to be fixed at trial, together with interest;

d.  Awarding BlueLinx its costs and attorneys' fees incurred in connection with this action; and

e.  Awarding BlueLinx such other and further relief as the Court deems just and proper.

## COUNT V
## BREACH OF FIDUCIARY DUTY

76.     BlueLinx repeats and realleges paragraphs 1 through 75 above as if fully stated herein.

77.     During his employment with BlueLinx, Veillette had authority to solicit business on behalf of BlueLinx.  What is more, Veillette received and reviewed the Code of Ethical Conduct which required him to avoid and disclose conflicts of interest with BlueLinx.  See Ex. B, p. 2.  As such, he owed BlueLinx a

21

fiduciary duty not to act contrary to BlueLinx's interests, which included, but was not limited to, a duty to avoid competition with BlueLinx.

78.     Veillette breached his fiduciary duty by, *inter alia*:

a.  Soliciting BlueLinx's customers, including Bison, for the benefit of MJB Wood;

b.  Soliciting BlueLinx's employees or independent contractors, for the benefit of MJB Wood; and

c.  Other illegal acts designed to unfairly compete with BlueLinx.

79.     As a direct and proximate result of Veillette's willful breach of his fiduciary duty to BlueLinx, BlueLinx has suffered and will continue to suffer damages in the form of wages and benefits paid to, but not earned by Veillette, lost business, lost revenue, lost goodwill, compensatory damages and other immeasurable and irreparable injuries.

80.     Based on the foregoing wrongful conduct by Veillette, which was knowing, willful, intentional, malicious, reckless and/or grossly negligent, Veillette breached his fiduciary duty and BlueLinx is entitled to disgorgement of any compensation paid to Veillette as well as an award of punitive damages.

81.     Wherefore, BlueLinx demands that the Court enter judgment against Veillette:

a. Requiring Veillette to pay compensatory and punitive damages to BlueLinx in an amount to be fixed at trial, together with interest;

b. Awarding BlueLinx its costs incurred in connection with this action; and

c. Awarding BlueLinx such other and further relief as the Court deems just and proper.

## COUNT VI
## BREACH OF EMPLOYEE DUTY OF LOYALTY

82.   BlueLinx repeats and realleges paragraphs 1 through 81 above as if fully stated herein.

83.   Veillette received and reviewed BlueLinx's Code of Ethical Conduct. As a result, Veillette owed BlueLinx a duty of loyalty not to act contrary to BlueLinx's interests, which included, but was not limited to, a duty to avoid competition with BlueLinx, during his employment.  See Ex. B, p. 2.

84.   Veillette breached his duty of loyalty by, *inter alia*:

a. Soliciting BlueLinx's customers, including Bison, for the benefit of MJB Wood;

b. Recruiting BlueLinx's employees or independent contractors, for the benefit of MJB Wood; and

c. Other illegal acts designed to unfairly compete with BlueLinx.

23

85.    As a direct and proximate result of Veillette's willful breach of his duty of loyalty to BlueLinx, BlueLinx has suffered and will continue to suffer damages in the form of wages and benefits paid to, but not earned by Veillette, lost business, lost revenue, lost goodwill, compensatory damages and other immeasurable and irreparable injuries.

86.    Based on the foregoing wrongful conduct by Veillette, which was knowing, willful, intentional, malicious, reckless and/or grossly negligent, Veillette breached his duty of loyalty and BlueLinx is entitled to disgorgement of any compensation paid to Veillette as well as an award of punitive damages.

87.    Wherefore, BlueLinx demands that the Court enter judgment against the Defendants:

    a.   Requiring Veillette to pay compensatory and punitive damages to BlueLinx in an amount to be fixed at trial, together with interest;

    b.   Requiring Veillette to disgorge all wages, including commissions, paid by BlueLinx after Veillette's decision to accept employment by MJB Wood;

    c.   Awarding BlueLinx its costs incurred in connection with this action; and

    d.   Awarding BlueLinx such other and further relief as the Court deems just and proper.

24

## <u>DEMAND FOR JURY TRIAL</u>

BlueLinx hereby demands a trial by jury on all claims so triable.

Respectfully submitted, this 10th day of October, 2016.

<u>*/s/ David W. Long-Daniels*</u>
David W. Long-Daniels
Georgia Bar No. 141916
long-danielsd@gtlaw.com
Mellori E. Lumpkin
Georgia Bar No. 358937
lumpkinm@gtlaw.com
GREENBERG TRAURIG LLP
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia  30305
Phone:  (678) 553-2100
Fax:  (678) 553-2212

*Attorneys for Plaintiff BlueLinx,*
*Corporation*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1D, NDGa., I certify that this document has been prepared in Times New Roman font and a point size of 14 in accordance with and as approved by the Court in LR 5.1, NDGa.

Respectfully submitted, this 10th day of October, 2016.

*/s/ David W. Long-Daniels*
David W. Long-Daniels
Georgia Bar No. 141916
long-danielsd@gtlaw.com
Mellori E. Lumpkin
Georgia Bar No. 358937
lumpkinm@gtlaw.com
GREENBERG TRAURIG LLP
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia  30305
Phone:  (678) 553-2100
Fax:  (678) 553-2212

*Attorneys for Plaintiff BlueLinx,*
*Corporation*