# EXHIBIT C

**GT GreenbergTraurig**

id W. Long-Daniels
Tel (678) 553-4744
Fax (678) 553-4745
long-danielsd@gtlaw.com

July 1, 2016

**VIA UPS & EMAIL**
Mr. Paul Veillette
1204 Volunteer Drive
Brunswick, MD 21716

**VIA UPS**

MJB Wood Group, Inc.
c/o Mr. Pete Little
Chief Financial Officer and Human Resources Director
2201 W. Royal Lane
Suite 250
Irving, TX 75063

Re:   **BlueLinx Corporation – Employee Non-Disclosure, Non-Solicitation and Non-Competition Agreement**

Dear Sirs:

This firm represents BlueLinx Corporation. We have reviewed your employment agreement and we have serious concerns regarding the actions of former BlueLinx employee, and current MJB Wood Group, Inc. employee, Mr. Paul Veillette ("Mr. Veillette"). Mr. Veillette resigned his employment with BlueLinx effective Friday, April 29, 2016, and is currently working at MJB Wood Group, Inc., a BlueLinx competitor. As you may or may not know, Mr. Veillette signed an Employee Non-Disclosure, Non-Solicitation and Non-Competition Agreement with BlueLinx dated July 27, 2015 (the "Employee Agreement"), which contained, among other things, several post-employment restrictions, such as obligations to refrain from competition and solicitation as well as non-disclosure of BlueLinx's confidential information. See attached Employee Non-Disclosure, Non-Solicitation and Non-Competition Agreement with BlueLinx dated July 27, 2015.

Specifically, BlueLinx engaged the undersigned to address imminent concerns regarding Mr. Veillette's: (1) current employment with MJB Wood Group, Inc., a BlueLinx competitor, wherein Mr. Veillette is providing the same or substantially the same services to MJB Wood Group, Inc., that he provided for and on behalf of BlueLinx; (2) Mr. Veillette's contacts with BlueLinx employees; and (3) Mr. Veillette's contacts with BlueLinx customers, including Bison Building Materials & Supplies, one of BlueLinx's largest customers, in violation of his obligations under the terms of his Employee Agreement.

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BOCA RATON
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MEXICO CITY*
MIAMI
MILAN"
NEW JERSEY
NEW YORK
NORTHERN VIRGINIA
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME"
SACRAMENTO
SAN FRANCISCO
SEOUL"
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TEL AVIV^
TOKYO°
WARSAW"
WASHINGTON, D.C.
WESTCHESTER COUNTY
WEST PALM BEACH

*OPERATES AS
GREENBERG TRAURIG MAHER LLP
*OPERATES AS
GREENBERG TRAURIG, S.C.
^STRATEGIC ALLIANCE
°OPERATES AS
GREENBERG TRAURIG LLP
FOREIGN LEGAL CONSULTANT OFFICE
"A BRANCH OF
GREENBERG TRAURIG, P.A.,
FLORIDA, USA
"OPERATES AS GREENBERG
TRAURIG HORITSU JIMUSHO
"OPERATES AS GREENBERG
TRAURIG GRZESIAK SPK.

July 1, 2016
Page 2

We have reason to believe that Mr. Veillette may have engaged in acts relative to BlueLinx which amount to breach of contract, and tortious interference with business relations, among other offenses. As a result, given BlueLinx's serious concerns, BlueLinx demands that Mr. Veillette immediately cease and desist from violating the Employee Agreement that he signed with BlueLinx. BlueLinx also demands that Mr. Veillette cease from making any contact with BlueLinx's employees or customers (past, present, or prospective) in any manner competitive to BlueLinx. BlueLinx likewise demands that Mr. Veillette immediately return all documents (including e-mails, electronic files, paper documents, and all other materials or information) relating to BlueLinx, its service/product offerings, its past and present employees, and/or its customers and prospects. Retention of BlueLinx property is a violation of the Employee Agreement and federal and state law.

Indeed, Mr. Veillette made very specific promises to BlueLinx in his Employee Agreement, including the following:

- **Non-Disclosure.** In Paragraph A, Mr. Veillette agreed to not disclose BlueLinx's confidential information as follows:

  "Confidential Information. I will not disclose, divulge, publish to others or use for any purpose any Confidential Information of BlueLinx except to the extent necessary to perform my duties and responsibilities as an Employee of BlueLinx. This obligation shall remain in effect for as long as the information or material in question retains its status as Confidential Information. "Confidential Information" means data and information relating to the business of BlueLinx, which is or has been disclosed to me or of which I became aware as a consequence of or through my relationship to BlueLinx, and which has value to BlueLinx and is not generally known outside of BlueLinx, including, but not limited to, knowledge or data relating to any product, formula, pattern, compilation program, device, method, technique, drawing, logistics, prices, process, financial data and plans or list of actual or potential customers or suppliers (whether constituting a trade secret or not). Confidential Information shall not include any data or information that has been voluntarily disclosed to the public by BlueLinx (except where such public disclosure has been made without authorization) or that has been independently developed and disclosed by others, or that otherwise enters the public domain through lawful means."

- **Non-Solicitation: Customers.** In Paragraph B, Mr. Veillette agreed that during his employment and for one (1) year immediately following the termination of his employment with BlueLinx for any reason, that he would not: "on my own behalf or on behalf of any person, firm, partnership, association, corporation or business organization, entity or enterprise (except BlueLinx), solicit, divert, take away, or attempt to solicit, divert, or take away any existing or prospective customer of BlueLinx with whom I had Material Contact during my employment with BlueLinx, for the purpose of selling or providing any product,

July 1, 2016
Page 3

equipment or service competitive with any product, equipment or service of BlueLinx."

"Material Contact" means "contact between myself and a customer or potential customer of BlueLinx (i) with whom or which I had dealings on behalf of BlueLinx; (ii) whose dealings with BlueLinx I coordinated or supervised; (iii) about whom or which I obtained Confidential Information in the ordinary course of business as a result of my employment with BlueLinx; or (iv) who or which received BlueLinx products or services, the sale or provision of which resulted in compensation, commissions or earnings for me within the two (2) years prior to the date of my termination from employment with BlueLinx."

• Non-Interference: Vendors. In Paragraph C, Mr. Veillette agreed that during his employment and for one (1) year immediately following the termination of his employment with BlueLinx for any reason, that he would not: "on my own behalf or on behalf of any person, firm, partnership, association, corporation or business organization, entity or enterprise (except BlueLinx), induce or cause, or attempt to induce or cause, any existing or prospective vendor of BlueLinx to reduce, terminate or otherwise negatively alter their business relationship with BlueLinx."

• Non-Recruitment: Employees and Independent Contractors. In Paragraph D, Mr. Veillette agreed that during his employment and for one (1) year immediately following the termination of his employment with BlueLinx for any reason, that he would not: "directly or indirectly, on my own behalf or on behalf of any person, firm, partnership association, corporation, or business organization, entity or enterprise (except BlueLinx), solicit, recruit or induce, or attempt to solicit, recruit or induce, any employee or independent contractor of BlueLinx to terminate his/her employment or other relationship with BlueLinx, or to enter into employment or any other kind of business relationship with me or any other person or business."

• Non-Competition. In Paragraph E, Mr. Veillette agreed that during his employment and for one (1) year after voluntary termination of his employment with BlueLinx, he would not: "engage in, provide or perform Competitive Services (as defined below), within the Territory or any other territory where I worked on behalf of BlueLinx during the one (1) year preceding the termination of my employment with BlueLinx. 'Competitive Services' means the business of wholesale distribution of building products, as well as, the business of providing any other activities, products, or services of the type conducted, authorized, offered, or provided by BlueLinx as of the date of my termination, or during the two (2) years immediately prior to the date of my termination."

July 1, 2016
Page 4

Mr. Veillette's Territory, as defined in his Employee Agreement includes Washington, DC, Delaware, Maryland, Pennsylvania, Texas, Virginia, and West Virginia.

• Ownership of Work Product. In Paragraph F, Mr. Veillette agreed that: "any and all Confidential Information and Protected Works as (defined below) and all intellectual property rights therein, are the sole and exclusive property of BlueLinx, and that no compensation in addition to my base salary is due to me for development, assignment or transfer of Protected Works. I acknowledge and agree that all Works (as defined below) related to or useful in the business of BlueLinx, whether created within or without BlueLinx's facilities, and before, during or after normal business hours, are specifically intended to be 'works made for hire' by me created within the scope of my employment with BlueLinx. I hereby waive any and all moral rights I may have to the Works in the United States and all other countries, including, without limitation, any rights I may have under 17 U.S.C. § 106A. I agree to perform, during and after my employment, such further acts as may be necessary to transfer, perfect, and defend BlueLinx's ownership of the Protected Works as reasonably requested by BlueLinx...I also agree that I will promptly and fully disclose in writing to BlueLinx the existence of any Protected Works and maintain adequate written records of all Protected Works, which records remain the exclusive property of BlueLinx. Further, I hereby assign and transfer, and agree to assign and transfer, all of my rights, title and interest, as and when those rights arise in any and all Protected Works, including all intellectual property rights therein to BlueLinx. If and to the extent it is impossible as a matter of law to assign rights including, without limitation, intellectual property rights in any portion of the Protected Works to BlueLinx, I hereby grant to BlueLinx an exclusive, irrevocable, perpetual, transferable, fully paid-up, royalty-free, worldwide and unlimited right and license (with right to sublicense) to make (including the right to practice methods, processes and procedures), have made, sell, import, export, distribute, use and exploit in any possible way (including but not limited to, modify, copy, amend, translate, display, further develop, prepare derivative works of, distribute and sublicense) all intellectual property rights pertaining to the Protected Works, and any portion of them. I shall not be entitled to use Protected Works for my own benefit or the benefit of anyone, except BlueLinx, without written permission from BlueLinx and then only subject to the terms of such permission."

"Protected Works" means "any and all ideas, inventions, improvements, discoveries (whether or not patentable), and Works (i) conceived, developed or produced by me, in whole or in part, alone or by others working with me or under my direction, during the period of my employment, (ii) conceived, produced or used or intended for use by or on behalf of BlueLinx or its customers or (iii) conceived, developed or produced by me after I leave the employ of BlueLinx that relates to or is based on Confidential Information to which I had access by virtue of my employment with BlueLinx."

"Works" means "any works of authorship, compilations, documents, data, notes, designs, photographs, artwork, drawings, visual or aural works, data bases, computer programs, software (source code and object code), systems, programs, software integration techniques, schematics, flow charts, studies, research, findings, manuals, pamphlets, instructional and training materials and other materials, including, without limitation, any modifications or improvements thereto or derivatives therefrom, and whether or not subject to copyright or trade secret protection."

- Return of Company Property.  In Paragraph G, Mr. Veillette agreed that: "Upon termination of my employment with BlueLinx or at any other time BlueLinx may request, I shall not retain or destroy (except as set forth below) and will immediately return to BlueLinx on or prior to my termination date, or at any other time BlueLinx requests such return, any and all property of BlueLinx that is in my possession or subject to my control, including, but not limited to customer files and information, papers, drawings, notes, manuals, specifications, designs, devices, code, email, documents, diskettes, CDs, tapes, keys, access cards, credit cards, identification cards, personal items or equipment, computers, mobile devices, other electronic media, all other files and documents relating to BlueLinx and its business (regardless of form, but specifically including all electronic files and data of BlueLinx), together with all Protected Works and Confidential Information belonging to BlueLinx or that I received from or through my employment with BlueLinx.  I will not make, distribute, or retain copies of any such information or property.  To the extent that I have electronic files or information in my possession or control that belong to BlueLinx, contain Confidential Information, or constitute Protected Works (specifically including but not limited to electronic files or information stored on personal computers, mobile devices, electronic media, or in cloud storage), on or prior to my termination date, or at any other time BlueLinx requests, I shall (a) provide BlueLinx with an electronic copy of all of such files or information (in an electronic format that readily accessible by BlueLinx); (b) after doing so, delete all such files and information, including all copies and derivatives thereof, from all non-BlueLinx-owned computers, mobile devices, electronic media, cloud storage, and other media, devices, and equipment, such that such files and information are permanently deleted and irretrievable; and (c) provide a written certification to BlueLinx that the required deletions have been completed and specifying the files and information deleted and the media source from which they were deleted.  I agree that I will reimburse BlueLinx for all of its costs, including reasonable attorneys' fees, of recovering the above materials and otherwise enforcing compliance with this provision if I do not return the materials to BlueLinx or take the required steps with respect to electronic information or files on or prior to my termination date or at any other time the materials and/or electronic file actions are requested by BlueLinx or if I otherwise fail to comply with this provision.  I acknowledge that my final compensation payments may be

July 1, 2016
Page 6

reduced by any amount owed to BlueLinx by me at the time of termination of my employment."

BlueLinx has invested significant time and monetary resources in its confidential and proprietary information, property, and business.  These provisions of the Employee Agreement are designed to safeguard BlueLinx's legitimate business interests and may be enforced through legal action, if necessary.  Indeed, BlueLinx is entitled to immediate and permanent injunctive relief against Mr. Veillette.  In addition, Mr. Veillette will likely be required to pay BlueLinx's attorneys' fees incurred in bringing and prosecuting a lawsuit against him for these breaches of the Employee Agreement and other violations of the law.   We fully expect Mr. Veillette to honor his express promises and commitments to BlueLinx and immediately cease his conduct.

Although BlueLinx reserves the right to pursue all legal avenues to protect its interests, it would prefer to reach an amicable resolution to this dispute which: (1) guarantees that Mr. Veillette will not further breach the Employee Agreement; (2) guarantees that Mr. Veillette will not further interfere with BlueLinx's business relations; (3) guarantees that Mr. Veillette will return all BlueLinx documents and information. To that end, we request that you respond to this letter no later than July 11, 2016 and make the commitments requested in clauses (1) through (3), above.

If you have any questions regarding the matter, please do not hesitate to contact me or, if you are represented by an attorney, have that attorney contact me.

Please let me hear from you.

Sincerely yours,

David W. Long-Daniels

Enclosure

## EMPLOYEE NON-DISCLOSURE, NON-SOLICITATION AND NON-COMPETITION AGREEMENT

| | |
|---|---|
| Name of Employee: | Veillette, Paul J. |
| Home Address: | 1204 Volunteer Drive |
| | Brunswick, MD  21716 |
| Employee's BlueLinx Corporation Location: | Frederick |
| Employee's BlueLinx Corporation Sales Territory, if applicable, or geographic area of Employee's responsibilities |
| ("Territory"):     DC, DE, MD, PA, VA, WV, TX |

In consideration of BlueLinx providing me with a grant of equity under the 2006 Long-Term Incentive Plan, my employment and BlueLinx providing me certain training and confidential information, I hereby agree as set forth below:

A.    **NON-DISCLOSURE.** I agree that I will not disclose, divulge, publish to others or use for any purpose any Confidential Information of BlueLinx, except to the extent necessary to perform my duties and responsibilities as an employee of BlueLinx. This obligation shall remain in effect for as long as the information or material in question retains its status as Confidential Information. For purposes of this Agreement, "Confidential Information" means data and information relating to the business of BlueLinx, which is or has been disclosed to me or of which I became aware as a consequence of or through my relationship to BlueLinx, and which has value to BlueLinx and is not generally known outside of BlueLinx, including, but not limited to, knowledge or data relating to any product, formula, pattern, compilation program, device, method, technique, drawing, logistics, prices, process, financial data and plans or list of actual or potential customers or suppliers (whether constituting a trade secret or not). Confidential Information shall not include any data or information that has been voluntarily disclosed to the public by BlueLinx (except where such public disclosure has been made without authorization) or that has been independently developed and disclosed by others, or that otherwise enters the public domain through lawful means. I understand that nothing herein prohibits me from reporting possible violations of federal laws or regulations to any governmental agency or entity, including but not limited to the Department of Justice, the Securities and Exchange Commission, and/or the Equal Employment Opportunity Commission. Further, I understand that I do not need prior authorization from BlueLinx to make any such reports or disclosures.

B.    **NON-SOLICITATION: Customers.** During my employment and for one (1) year immediately following the termination of my employment with BlueLinx for any reason, I shall not, on my own behalf or on behalf of any person, firm, partnership, association, corporation or business organization, entity or enterprise (except BlueLinx), solicit, divert, take away, or attempt to solicit, divert, or take away any existing or prospective customer of BlueLinx with whom I had Material Contact during my employment with BlueLinx, for the purpose of selling or providing any product, equipment or service competitive with any product, equipment or service of BlueLinx. For purposes of this Agreement, "Material Contact" means contact between myself and a customer or potential customer of BlueLinx (i) with whom or which I had dealings on behalf of BlueLinx; (ii) whose dealings with BlueLinx I coordinated or supervised; (iii) about whom or which I obtained Confidential Information in the ordinary course of business as a result of my employment with BlueLinx; or (iv) who or which received BlueLinx products or services, the sale or provision of which resulted in compensation, commissions, or earnings for me within the two (2) years prior to the date of my termination from employment with BlueLinx.

C.    **NON-INTERFERENCE: Vendors.** During my employment and for one (1) year immediately following the termination of my employment with BlueLinx for any reason, I shall not, on my own behalf or on behalf of any person, firm, partnership, association, corporation or business organization, entity or enterprise (except BlueLinx), induce or cause, or attempt to induce or cause, any existing or prospective vendor of BlueLinx to reduce, terminate or otherwise negatively alter their business relationship with BlueLinx.

D.    **NON-RECRUITMENT: Employees and Independent Contractors.** During my employment and for one (1) year immediately following the termination of my employment with BlueLinx for any reason, I shall not, directly or indirectly, on my own behalf or on behalf of any person, firm, partnership, association, corporation or business organization, entity or enterprise (except BlueLinx), solicit, recruit or induce, or attempt to solicit, recruit or induce, any employee or independent contractor of BlueLinx to terminate his/her employment or other relationship with BlueLinx, or to enter into employment or any other kind of business relationship with me or any other person or business.

E.    **NON-COMPETITION.**  I agree that during my employment with BlueLinx, and, unless I experience an Involuntary Termination, for a period of one (1) year after termination of my employment with BlueLinx, I will not engage in, provide, or perform Competitive Services within the Territory or any other territory where I worked on behalf of BlueLinx during the one (1) year preceding the termination of my employment with BlueLinx. For purposes of this Agreement, "Competitive Services" means the business of wholesale distribution of building products, as well as, the business of providing any other activities, products, or services of the type conducted, authorized, offered, or provided by BlueLinx as of the date of my termination, or during the two (2) years immediately prior to the date of my termination. For purposes of this Agreement, "Involuntary Termination" means a termination of my employment by BlueLinx that is <u>not</u> due to (i) my failure to perform my employment duties; (ii) my commission of an act of fraud, moral turpitude, or embezzlement; (iii) in accordance with applicable law, my use of alcohol, controlled substances or illegal drugs that results in my failure to perform my employment duties; (iv) any material breach of this Agreement; or (v) my inability to perform  the essential functions of my job with or without reasonable accommodations, for a period of at least ninety (90) days.

F.    **OWNERSHIP OF WORK PRODUCT.**  I agree that any and all Confidential Information and Protected Works (as defined below), and all intellectual property rights therein, are the sole and exclusive property of BlueLinx, and that no compensation in addition to my base salary is due to me for development, assignment or transfer of Protected Works.  I acknowledge and agree that all Works (as defined below) related to or useful in the business of BlueLinx, whether created within or without BlueLinx's facilities, and before, during or after normal business hours, are specifically intended to be "works made for hire" by me created within the scope of my employment with BlueLinx. I hereby waive any and all moral rights I may have to the Works in the United States and all other countries, including, without limitation, any rights I may have under 17 U.S.C. § 106A. I agree to perform, during and after my employment, such further acts as may be necessary to transfer, perfect, and defend BlueLinx' ownership of the Protected Works as reasonably requested by BlueLinx. Notwithstanding the foregoing, this Agreement shall not apply to inventions or discoveries unrelated to the business of BlueLinx that are developed by me on my own time, without the use of BlueLinx equipment, supplies, facilities, Confidential Information or trade secrets.  I also agree that I will promptly and fully disclose in writing to BlueLinx the existence of any Protected Works and maintain adequate written records of all Protected Works, which records remains the exclusive property of BlueLinx.  Further, I hereby assign and transfer, and agree to assign and transfer, all of my rights, title and interest, as and when those rights arise, in any and all Protected Works, including all intellectual property rights therein, to BlueLinx.  If and to the extent it is impossible as a matter of law to assign rights, including, without limitation, intellectual property rights in any portion of the Protected Works to BlueLinx, I hereby grant to BlueLinx an exclusive, irrevocable, perpetual, transferable, fully paid-up, royalty-free, worldwide and unlimited right and license (with right to sublicense) to make (including the right to practice methods, processes and procedures), have made, sell, import, export, distribute, use and exploit in any possible way (including, but not limited to, modify, copy, amend, translate, display, further develop, prepare derivative works of, distribute and sublicense) all intellectual property rights pertaining to the Protected Works, and any portion of them.  I shall not be entitled to use Protected Works for my own benefit or the benefit of anyone, except BlueLinx, without written permission from BlueLinx and then only subject to the terms of such permission.

For purposes of this Agreement, "Protected Works" means any and all ideas, inventions, improvements, discoveries (whether or not patentable), and Works (i) conceived, developed or produced by me, in whole or in part, alone or by others working with me or under my direction, during the period of my employment, (ii) conceived, produced or used or intended for use by or on behalf of BlueLinx or its customers or (iii) conceived, developed or produced by me after I leave the employ of BlueLinx that relates to or is based on Confidential Information to which I had access by virtue of my employment with BlueLinx.  Also for purposes of this Agreement, "Works" means any works of authorship, compilations, documents, data, notes, designs, photographs, artwork, drawings, visual or aural works, data bases, computer programs, software (source code and object code), systems, programs, software integration techniques, schematics, flow charts, studies, research, findings, manuals, pamphlets, instructional and training materials and other materials, including, without limitation, any modifications or improvements thereto or derivatives therefrom, and whether or not subject to copyright or trade secret protection.

G.    **RETURN OF COMPANY PROPERTY.**  Upon termination of my employment with BlueLinx or at any other time BlueLinx may request, I agree that I will not retain or destroy (except as set forth below), and will immediately return to BlueLinx on or prior to my termination date, or at any other time BlueLinx requests such return, any and all property of BlueLinx that is in my possession or subject to my control, including, but not limited to, customer files and information, papers, drawings, notes, manuals, specifications, designs, devices, code, email, documents, diskettes, CDs, tapes, keys, access cards, credit cards, identification cards, personal items or equipment, computers, mobile devices, other electronic media, all other files and documents relating to BlueLinx and its business

(regardless of form, but specifically including all electronic files and data of BlueLinx), together with all Protected Works and Confidential Information belonging to BlueLinx or that I received from or through my employment with BlueLinx. I will not make, distribute, or retain copies of any such information or property. To the extent that I have electronic files or information in my possession or control that belong to BlueLinx, contain Confidential Information, or constitute Protected Works (specifically including but not limited to electronic files or information stored on personal computers, mobile devices, electronic media, or in cloud storage), on or prior to my termination date, or at any other time BlueLinx requests, I shall (a) provide BlueLinx with an electronic copy of all of such files or information (in an electronic format that readily accessible by BlueLinx); (b) after doing so, delete all such files and information, including all copies and derivatives thereof, from all non-BlueLinx-owned computers, mobile devices, electronic media, cloud storage, and other media, devices, and equipment, such that such files and information are permanently deleted and irretrievable; and (c) provide a written certification to BlueLinx that the required deletions have been completed and specifying the files and information deleted and the media source from which they were deleted. I agree that I will reimburse BlueLinx for all of its costs, including reasonable attorneys' fees, of recovering the above materials and otherwise enforcing compliance with this provision if I do not return the materials to BlueLinx or take the required steps with respect to electronic information or files on or prior to my termination date or at any other time the materials and/or electronic file actions are requested by BlueLinx or if I otherwise fail to comply with this provision. I acknowledge that my final compensation payments may be reduced by any amount owed to BlueLinx by me at the time of termination of my employment.

H.      **RIGHT TO EQUITY GRANTS; REMEDIES UPON BREACH.** I specifically acknowledge and agree that my rights with respect to any non-vested or non-settled equity grants received from BlueLinx during my employment are contingent upon full compliance with the terms of this Agreement, and that any breach or other failure to comply with this Agreement by me shall result in forfeiture of any rights that I may have to receive shares of BlueLinx stock, performance shares or other consideration that have not become vested or been settled before such breach or failure to comply. I further acknowledge and agree that the remedy at law for any breach of Paragraphs A through G of this Agreement (the "Restrictive Covenants") will be inadequate, and that in the event I breach, or threaten to breach, any of the Restrictive Covenants, BlueLinx shall have the right and remedy, without the necessity of proving actual damage or posting any bond, to enjoin me, preliminarily and permanently, from violating or threatening to violate the Restrictive Covenants and to have the Restrictive Covenants specifically enforced by any court of competent jurisdiction. I further agree that any breach or threatened breach of the Restrictive Covenants would cause irreparable injury to BlueLinx and that money damages would not provide an adequate remedy to BlueLinx. I understand and agree that if I violate any of the obligations set forth in the Restrictive Covenants, the period of restriction applicable to each obligation violated shall cease to run during the pendency of any litigation over such violation, provided that such litigation was initiated during the period of restriction. Such rights and remedies shall be in addition to, and not in lieu of, any other rights and remedies available to BlueLinx at law or in equity. I further understand and agree that, if I become involved in legal action regarding the enforcement of the Restrictive Covenants and if BlueLinx prevails in such legal action, BlueLinx will be entitled, in addition to any other remedy, to recover from me its reasonable costs and attorneys' fees incurred in enforcing such covenants. BlueLinx's ability to enforce its rights under the Restrictive Covenants or applicable law against me shall not be impaired in any way by the existence of a claim or cause of action on the part of myself that is based on, or arising out of, this Agreement or any other event or transaction.

I.      **AT-WILL EMPLOYMENT.** I acknowledge that nothing contained herein is intended to constitute a contract of continued employment, but instead I recognize and acknowledge that my employment with BlueLinx is on an "at-will" basis and may be terminated by either BlueLinx or me at any time, for any reason or for no reason, with or without cause, and with or without notice. However, if my employment is subject to the terms of a collective bargaining agreement, nothing herein shall alter the terms and conditions of employment as established by said collective bargaining agreement.

J.      **SEVERABILITY.** If, in any judicial proceeding, a court refuses to enforce any provisions (or any part thereof) of this Agreement, then such unenforceable provisions (or such part) shall be eliminated from this Agreement to the extent necessary to permit the remaining provisions (or portions thereof) to be enforced. In the event any provisions of this Agreement are deemed to exceed the time, geographic, or scope limitations permitted by applicable law, then such provisions shall be reformed to the maximum time, geographic, or scope limitations, as the case may be, then permitted by such law.

K.      **GOVERNING LAW AND FORUM SELECTION.** The laws of the State of Georgia shall govern this Agreement. If Georgia's conflicts of law rules would apply another state's laws, I agree that Georgia law shall still govern. The exclusive forum for any action to enforce this Agreement, as well as any action relating to or arising out

of this Agreement, shall be the state or federal courts of the State of Georgia. I hereby consent to the personal jurisdiction of the state and/or federal courts located in Georgia and waive (i) any objection to jurisdiction or venue, or (ii) any defense claiming lack of jurisdiction or improper venue, in any action brought in such Georgia courts.

L. **WAIVER.** Failure of BlueLinx to insist, in one or more instances, on my performance in strict accordance with the terms and conditions of this Agreement shall not be deemed a waiver or relinquishment of any right granted in this Agreement or of the future performance of any such term or condition, or of any other term or condition of this Agreement, unless such waiver is contained in a writing signed by BlueLinx.

M. **ENTIRE AGREEMENT; AMENDMENT.** This Agreement contains the entire agreement between BlueLinx and myself with respect to the subject matter hereof and, from and after the date hereof, this Agreement shall supersede any other agreement, written or oral, between us relating to the subject matter of this Agreement. This Agreement may not be amended or modified otherwise than by a written agreement executed by the parties hereto or their respective successors and legal representatives.

N. **DISCLOSURE OF AGREEMENT.** I acknowledge and agree that, during my employment and for one (1) year immediately following the termination of my employment with BlueLinx for any reason, I will disclose the existence and terms of this Agreement to any prospective employer, business partner, investor or lender prior to entering into an employment, partnership or other business relationship with such prospective employer, business partner, investor or lender. I further agree that BlueLinx shall have the right to make any such prospective employer, business partner, investor or lender aware of the existence and terms of this Agreement.

By signing this Agreement, I indicate that I have read, accepted and agreed to its terms.

IN WITNESS WHEREOF, I have executed this Agreement on the date shown below.

**EMPLOYEE**

Signature: _____

Print Name: _P. Veillette_____

Date: _7·27·15_____

**ACKNOWLEDGED AND ACCEPTED:**

**BLUELINX CORPORATION**

By: _____
      Whitney Randolph Patterson III
      Vice President and Chief Human
      Resources Officer

GREENBERG TRAURIG, LLP ▪ ATTORNEYS AT LAW ▪ WWW.GTLAW.COM